IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

PHILIP E. ASHCRAFT, et al.,

                Plaintiffs,

v.                                   CIVIL ACTION NO.   2:15-cv-03192

CORE LABORATORIES LP, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion to Transfer Venue ("Defendants' Motion"), in which Defendants request that the Court transfer this matter to the United States District Court for the Southern District of Texas (the "Transferee District"). (ECF No. 11.) For the reasons provided herein, the Court **GRANTS** Defendants' Motion.

## *I.  Background*

This case relates to the alleged failure of Defendants to pay overtime wages to Plaintiffs as required by the Fair Labor Standards Act (the "FLSA"). Plaintiff Ashcraft "is an individual residing in Parkersburg, Wood County, West Virginia." (ECF No. 1 ¶ 1.) Plaintiff Gandara "is an individual residing in Marietta, Washington County, Ohio." (*Id.* ¶ 2.)

Defendant Core Laboratories LLC ("Defendant Core LLC") "is a for-profit limited liability company organized pursuant to the laws of the State of Delaware" and its "principal place of

business [is] located [in] Houston, Texas." (*Id.* ¶¶ 6–7.) Defendant Core LLC "is the [g]eneral [p]artner of" Defendant Core Laboratories LP ("Defendant Core LP"). (*Id.* ¶ 8.)

Defendant Core LP "is a for-profit limited partnership, organized pursuant to the laws of the State of Delaware," (*id.* ¶ 3), and its "principal place of business and main U.S. headquarters is located in Houston, Texas," (ECF No. 11, Ex. 1 ¶ 4). Defendant Core LP "maintains 70 offices and laboratories in more than 50 countries." (*Id.* ¶ 4.)

Defendant "ProTechnics[1] is a division of [Defendant] Core [LP]" and its "principal place of business and main U.S. headquarters is also located in Houston, Texas." (*Id.* ¶ 6; *see also* ECF No. 1 ¶ 4 (providing the allegation in the Complaint that "Defendant ProTechnics has a principal office located . . . [in] Houston, Texas").) Defendant "ProTechnics has 18 . . . sales and field locations" in the United States. (ECF No. 11, Ex. 1 ¶ 6.)

"Defendant Kalika is the District Manager for Defendant ProTechnics responsible for the business and operations of Defendant ProTechnics' Parkersburg, West Virginia offices." (ECF No. 1 ¶ 9.) Defendant Kalika "lives in Parkersburg, West Virginia." (ECF No. 11, Ex. 1 ¶ 12.)

On March 16, 2015, Plaintiffs filed their Complaint against Defendants in this Court. (ECF No. 1.) The Complaint alleges that Plaintiffs Ashcraft and Gandara were hired by "Defendants ProTechnics and Core" LP as "Field Service Representatives," (*id.* ¶¶ 14 & 31), under the supervision of Defendant Kalika at "Defendant ProTechnics' Parkersburg, West Virginia offices," (*id.* ¶ 9). The Complaint avers that Plaintiffs "did not qualify . . . for any exemption from the

---

[1] The Complaint identifies the entity Defendants Core LP and ProTechnics as "Core Laboratories LP d/b/a ProTechnics." (ECF No. 1 at 1.) While Defendants state that ProTechnics is a division of Defendant Core LP, (*e.g.*, ECF No. 11, Ex. 1 ¶ 6), it is not clear based on the available record whether these two businesses are a single legal entity and, correspondingly, a single defendant. Whether these two businesses are separate legal entities is ultimately immaterial for purposes of the analysis in this Opinion. Nonetheless—for stylistic purposes in separately addressing these entities—the Court shall herein identify both Core LP and ProTechnics as a "Defendant" when discussing each entity separately.

2

overtime provisions of the FLSA." (*Id.* ¶ 35; *see also id.* ¶ 20 (providing the allegation in the Complaint that Plaintiff Ashcraft was not "classif[ied] . . . as a non-exempt employee in his . . . [o]ffer [l]etter" from Defendants ProTechnics and Core LP).) The Complaint further alleges that Plaintiffs worked substantial overtime, (*see, e.g.*, *id.* ¶ 22 & 37), yet were not paid "at a rate of one and one-half times Plaintiffs' . . . regular rates for all hours worked in excess of 40 hours in a work week," (*id.* ¶ 44). Finally, the Complaint avers that "Defendants failed to keep accurate records of the hours worked by Plaintiff Ashcraft, Plaintiff Gandara, and similarly situated employees." (*Id.* ¶ 23.)

The Complaint includes a single count, which alleges that Defendants "failed to pay [Plaintiffs] and all similarly situated employees all overtime wages due and owing to Plaintiffs and the similarly situated employees in violation of the FLSA, [29] U.S.C. § 207." (*Id.* ¶ 45.) The Complaint describes the "similarly situated employees" as the "approximately 24 employees" who (1) "had duties similar to the duties of Plaintiffs Ashcraft and Gandara;" (2) "have worked under similar conditions and similar work schedules as Plaintiffs Ashcraft and Gandara;" (3) "have been non-exempt employees entitled to overtime wages similar to Plaintiffs Ashcraft and Gadara [sic];" (4) "have been . . . treated by Defendants as exempt employees in a manner similar to Plaintiffs Ashcraft and Gandara;" and (5) "have been . . . denied overtime wages by Defendants in a manner similar to Plaintiffs Ashcraft and Gandara." (*Id.* ¶ 38–39.)

Defendants filed Defendants' Motion on April 24, 2015. (ECF No. 11.) Defendants attached the notarized affidavit of Suzanne Long as an exhibit to this motion. (*See id.*, Ex. 1.) In this affidavit, Ms. Long states that she is employed "as a Senior Human Resources Generalist at" Defendant Core LP, (*id.* ¶ 1), and possesses "personal knowledge . . . regarding [Defendant]

ProTechnics' employment records, personnel policies and procedures regarding compensation, classification of employees, personnel record-keeping procedures, and customary employment practices," (*id.* ¶ 3). Ms. Long also states that Defendant Core LP's "headquarters" is in Houston, Texas, its "business records are located in Houston," and its "executive activities are primarily conducted in Houston." (*Id.* ¶ 5.) Ms. Long states that Defendant Core LP's "Human Resources Department . . . in Houston is exclusively responsible" for (1) "formulating and overseeing ProTechnics' personnel policies and procedures, including the classification of ProTechnics employees and Protechnics employees' wages, hours, and overtime;" (2) "maintaining all original employment and payroll records for ProTechnics employees, including time, attendance, and expense reports;" and (3) "processing and administering payroll for ProTechnics employees." (*Id.* ¶ 7.) Ms. Long then states that "[e]mployee pay is processed, prepared, and distributed form the headquarters in Houston, and all paycheck stubs and W-2 Earnings Summaries for ProTechnics employees bear [Defendant Core LP's] Houston address." (*Id.* ¶ 8.) Ms. Long further states that Defendant Core LP's "Houston headquarters is the repository for the original employment and payroll records relevant to the claims of Plaintiffs . . . Ashcraft and . . . Gandara, as well as the other putative collective action members." (*Id.* ¶ 10.)

As to Defendants' pertinent policies, Ms. Long states in her affidavit that "[t]he policies and practices related to human resources, compensation, and classification of the Field Service Representative position(s) were generated (and are maintained) at [Defendant Core LP's] principal headquarters in Houston." (*Id.* ¶ 11; *see also id.* ¶ 10 (providing Ms. Long's statement that Defendant "ProTechnics' business records, including time, attendance, and expense reports and policies and practices related to human resources and compensation . . . are maintained in

Houston").) Ms. Long also states that "[n]o company policies pertaining to wages, hours, and overtime pay were ever devised in West Virginia." (*Id.* ¶ 9.)

Plaintiffs filed their opposition briefing to Defendants' Motion on May 11, 2015. (ECF No. 15.) Plaintiffs do not contest any of these statements in Ms. Long's affidavit in Plaintiffs' opposition briefing. (*See id.*) Defendants then filed their reply briefing in support of Defendants' Motion on May 18, 2015. (ECF No. 16.) As such, Defendants' Motion is fully briefed and ready for disposition.

## *II. Legal Standard*

Defendants request transfer of this case "pursuant to 28 U.S.C. § 1404(a) on the ground of *forum non conveniens*." (ECF No. 12 at 1.) Section 1404(a) "provides a mechanism for transfer between district courts in which venue is proper." *Ferro Prods. Corp. v. Cattrell Cos.*, Civil Action No. 2:14–cv–30752, 2015 WL 5721605, at *5 (S.D. W. Va. Sept. 29, 2015). 28 U.S.C. § 1404(a) states the following, in relevant part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." "[T]he purpose of [Section 1404(a)] is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted). As such, "Section 1404(a) is generally reserved for cases that are filed in the proper district, but in which convenience dictates transfer to another district." *Leonard v. Mylan, Inc.*, 718 F. Supp. 2d 741, 743 (S.D. W. Va. 2010); *see also Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2013) ("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court

system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." (citation omitted)).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622). "In deciding whether to transfer a case under § 1404(a), a court must first determine whether the action 'might have been brought' in the transferee district." *Leonard*, 718 F. Supp. 2d at 745 (citing 28 U.S.C. § 1404(a)). If so, the district court must "weigh in the balance a number of case-specific factors." *Stewart Org.*, 487 U.S. at 29. These "private- and public-interest factors" include the following: (1) "ease of access to evidence;" (2) "the convenience of the parties and witnesses;" (3) "the cost of obtaining the attendance of witnesses;" (4) "the availability of compulsory process;" (5) "the possibility of a view;" (6) "the interest in having local controversies decided at home;" and (7) "the overriding interests of justice." *Leonard*, 718 F. Supp. 2d at 745 (citing *Vass v. Volvo Trucks, N. Am., Inc.*, 304 F. Supp. 2d 851, 857 (S.D. W. Va. 2004)); *cf. Stewart Org.*, 487 U.S. at 30 (stating that "[t]he district court . . . must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interests of justice'"). "Relevant considerations in evaluating the 'interests of justice' are the pendency of a related action; the court's familiarity with the applicable law; docket conditions; access to premises that might have to be viewed; the possibility of unfair trial; the ability to join other parties; and the possibility of harassment." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 996 (E.D. Va. 2011) (citation omitted).

"The plaintiff's choice of forum is accorded great weight." *Leonard*, 718 F. Supp. 2d at 745 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). "Indeed, 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Wamsley v. Lifenet Transplant Servs., Inc.*, Civil Action No. 2:10–cv–00990, 2011 WL 1230047, at *3 (S.D. W. Va. Mar. 31, 2011) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *cf. Pragmatus AV*, 769 F. Supp. 2d at 995 ("The level of deference to a plaintiff's forum choice 'varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action.'" (quoting *Bd. of Trs. v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Va. 1988))). "Further, a transfer motion will be denied if it would merely shift the inconvenience from the defendant to the plaintiff." *AFA Enters., Inc. v. Am. States Ins. Co.*, 842 F. Supp. 902, 909 (S.D. W. Va. 1994) (citations omitted).

"It is well settled that the decision whether to transfer a matter to another district is committed to the sound discretion of the district court." *Id.* (citations omitted). "The party seeking transfer carries the burden of showing that the current venue is inconvenient." *Leonard*, 718 F. Supp. 2d at 745 (citing *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010)).

### III. Discussion

Defendants argue that venue lies in the Transferee District and the balance of the pertinent factors weighs in favor of transferring this case to that forum. (*See, e.g.*, ECF No. 12 at 6–18.) The Court agrees and finds that transfer of this litigation is appropriate.

### A.      Venue in the Transferee District

As a preliminary matter, the Court notes that this action might have been brought in the Transferee District. *See Leonard v. Mylan, Inc.*, 718 F. Supp. 2d 741, 745 (S.D. W. Va. 2010) ("In deciding whether to transfer a case under § 1404(a), a court must first determine whether the action 'might have been brought' in the transferee district." (citing 28 U.S.C. § 1404(a))). "Determining proper venue is generally guided by 28 U.S.C. § 1391," *id.* at 744, which provides, in pertinent part, that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2). "Venue is proper in each district that is the situs of a substantial part of the events or omissions giving rise to the claim," and, as such, "venue may lie in more than one district." *C.H. James & Co. v. Fed. Food Marketers Co.*, 927 F. Supp. 187, 189 (S.D. W. Va. 1996) (citation omitted). "[I]n determining whether the events or omissions are sufficiently substantial to support venue . . . , a court should not focus only on those matters that are in dispute or that directly led to the filing of the action." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (citation omitted). "Rather, it should review the entire sequence of events underlying the claim." *Id.* (citation omitted).

In this case, Plaintiffs allege that Defendants failed to pay Plaintiffs "and all similarly situated employees" overtime wages as required by the FLSA. (*See* ECF No. 1 ¶¶ 40–46.) Plaintiffs also allege that "Defendants failed to keep accurate records of the hours worked by Plaintiff[s] . . . and similarly situated employees." (*Id.* ¶ 23.)

Defendants contend—and Plaintiffs do not dispute—that Plaintiffs' wages were paid from Defendants' headquarters in the Transferee District and the determinations and policies regarding these payments were developed in the Transferee District. (*See, e.g.*, ECF No. 11, Ex. 1 ¶¶ 8–11.) As such, all of the contested actions or omissions giving rise to Plaintiffs' claim occurred in the

Transferee District. The Court therefore finds that venue lies in the Transferee District. *See, e.g.*, *Leonard*, 718 F. Supp. 2d at 744 (finding that venue lied in the transferee district where "[t]he events or omissions giving rise to the plaintiffs' claims all occurred in the [transferee district]").

## B.   Factor Analysis

The Court now turns to the pertinent factors relating to transfer.[2]   As to the factor pertaining to the ease of access to relevant evidence, Defendants contend—and Plaintiffs do not dispute—that a substantial portion of the relevant evidence in this case is located in the Transferee District. (*See, e.g.*, ECF No. 11, Ex. 1 ¶ 10 (providing the affidavit of Suzanne Lang, in which she notes that Defendant Core LP's "Houston headquarters is the repository for the original employment and payroll records relevant to the claims of Plaintiffs . . . , as well as the other putative collective action members"); *id.* ¶ 11 (providing Ms. Lang's statement that "[t]he policies and practices related to human resources, compensation, and classification of the Field Service Representative position(s) were generated (and are maintained) at [Defendant Core LP's] principal headquarters in Houston").) The Court recognizes that the availability of electronic discovery diminishes the weight of this factor—to some extent—if the pertinent evidence consists of physical documents. *See, e.g.*, *Newman v. Advanced Tech. Innovation Corp.*, No. 1:12cv24 (JCC/TRJ), 2012 WL 1414859, at *3 (E.D. Va. Apr. 20, 2012) ("The Court gives little weigh to the location of . . . records since it appears they can easily be transmitted electronically." (citing *Schrader-Bridgeport*

---

[2]  The Court notes that certain potential considerations are not implicated in this case, including (1) the possibility of a view; (2) the court's familiarity with the applicable law; (3) docket conditions; (4) access to the premises that might have to be viewed; (5) the possibility of unfair trial; (6) the ability to join other parties; and (7) the possibility of harassment. *See, e.g.*, *Leonard v. Mylan, Inc.*, 718 F. Supp. 2d 741, 745 (S.D. W. Va. 2010) (discussing pertinent factors in the *forum non conveniens* transfer analysis (citation omitted)); *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 996 (E.D. Va. 2011) (providing "[r]elevant considerations in evaluating the 'interests of justice'" factor). The Court further notes that neither party argues that any of these considerations are relevant in this transfer analysis. (*See* ECF No. 12; ECF No. 15; ECF No. 16.) The Court shall therefore forego on a discussion of these considerations in the instant analysis.

9

*Int'l, Inc. v. Cont'l Auto. Sys. US, Inc.*, No. 6:11–cv–00014, 2012 WL 503602, at *6 (W.D. Va. Feb. 15, 2012))); *Casana Furniture Co. v. Coaster Co. of Am.*, No. 1:08CV744, 2009 WL 783399, at *4 (M.D.N.C. Mar. 24, 2009) ("[R]egardless of their location, any files, records, and documents that [the defendant] apparently keeps [in the potential transferee district] can be easily copied and transported . . . or sent electronically, and thus their location is entitled to little weight." (citing *Finmeccanica S.p.A. v. Gen. Motors Corp.*, No. 1:07CV794, 2007 WL 4143074, at *7 (E.D. Va. Nov. 19, 2007))); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." (citation omitted)). Nonetheless, the presence in the Transferee District of a substantial portion of the pertinent evidence regarding Plaintiffs' claims weighs—to an appropriately diminished extent—in favor of transferring this case. *See, e.g., In re Apple, Inc.*, 602 F.3d 909, 914 (8th Cir. 2010) ("While electronic filing may lessen the inconvenience of document handling, if the need arises to refer to the original documents or evidence in this litigation, [the potential transferee district] would prove more convenient." (citation omitted)); *Newman*, 2012 WL 1414859, at *3 ("Although entitled to little weight, this factor nevertheless favors transfer more than it disfavors it." (citation omitted)); *Sarandi v. Breu*, No. C 08–2118 SBA, 2009 WL 2871049, at *7 (N.D. Cal. Sept. 2, 2009) ("While technological advances may make documents more portable, their physical location remains a pertinent consideration." (citation omitted)); *cf. In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."). *See generally* 15 Arthur R. Miller, *Federal Practice and Procedure* § 3853 (4th ed.) ("While recognizing the impact

10

of technology, courts generally conclude that the physical location of records and document is still relevant. On the other hand, the factor tends to be given relatively little weight." (footnotes omitted)).

Next, the convenience of the parties and witnesses and the cost of obtaining the attendance of witnesses together weigh somewhat against transfer. The entity Defendants have headquarters in the Transferee District and Defendants' employees with knowledge of relevant facts are employed in that district.[3] (*See* ECF No. 11, Ex. 1 ¶¶ 4–11; *see also* ECF No. 12 at 12 (identifying four of Defendant Core LP's employees who "are exclusively employed at [Defendant] Core's Houston headquarters" and who Defendants "identify . . . as key witnesses").) On the other hand, at least some of the potential Plaintiffs in this case reside in this District and transfer would inconvenience those individuals.[4] (*See, e.g.*, ECF No. 15 at 7.) However, it is not clear exactly how many of these potential Plaintiffs reside in this District. (*See, e.g., id.* at 4 (providing Plaintiffs' assertion that they "anticipate[]" that "the vast majority" of potential class members will be "West

---

[3] As noted previously, courts consider the availability of compulsory process in the transfer analysis. *See, e.g., Leonard v. Mylan, Inc.*, 718 F. Supp. 2d 741, 745 (S.D.W. Va. 2010). Courts have found this factor to be an important consideration where potential non-parties who reside outside of the transferor district are necessary witnesses in the litigation. *See, e.g., comScore, Inc. v. Integral Ad Sci., Inc.*, 924 F. Supp. 2d 677, 689 (E.D. Va. 2013).

Here, Defendants identify two former employees of Defendant Core LP who may hold material information. (*See, e.g.*, ECF No. 16 at 4.) However—to the extent these non-party individuals may hold material information—the Court finds that the existence of these potential witnesses does not weigh in favor of transfer for two reasons. First, Defendants state only that "it *may* be necessary . . . to subpoena [these] non-party witnesses." (*Id.* (emphasis added).) This statement provides no indication, whatsoever, that these non-party witnesses will be necessary witnesses in this litigation. (*See id.*)

Second, Defendants represent that these non-party potential witnesses live in "Texas." (*Id.*) Based on this representation, there is no way for the Court to discern whether the Transferee District holds subpoena power over these potential witnesses. *See, e.g.*, Fed. R. Civ. P. 45(c) (stating that "[a] subpoena may command a person to attend a trial, hearing, or deposition only" (1) "within 100 miles of where the person resides, is employed, or regularly transacts business in person;" or (2) "within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer[,] or (ii) is commanded to attend a trial and would not incur substantial expense").

Accordingly, the Court finds that—to the extent the factor pertaining to availability of compulsory process is implicated in this case—that factor does not weigh in favor of transferring this case.

[4] The Court notes that, even if this case proceeds as a collective action, it is unclear how many of the potential plaintiffs will actively participate in the litigation and, correspondingly, be inconvenienced by transfer.

Virginia residents").) Indeed, one of the two named Plaintiffs resides outside of this District and would have to travel regardless to reach proceedings in this forum, (*see* ECF No. 1 ¶ 2 (stating that Plaintiff Gandara "is an individual residing in Marietta, Washington County, Ohio"))—albeit a considerably shorter distance than that Plaintiff would be required to travel to the Transferee District. Additionally, Plaintiffs have not identified potential witnesses who would be burdened by a transfer. (*See, e.g.*, ECF No. 15 at 6 (stating that "Plaintiffs non-party witnesses . . . may include numerous residents of West Virginia, Pennsylvania, and Ohio," but failing to identify these potential witnesses).) Taking these disparate considerations into account, the Court finds that the convenience of the parties and witnesses and the cost of obtaining witnesses together weigh somewhat against transferring this matter.[5] *See, e.g.*, *Longo v. Trojan Horse Ltd.*, 992 F. Supp. 2d 612, 618 (E.D.N.C. 2014) (finding that the inconvenience to parties and witnesses weighed against transfer because "[p]arty witnesses . . . 'are presumed to be more willing to testify in a different forum,' and [the] defendants have not demonstrated that any witnesses would be unwilling to travel to this jurisdiction" (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718–19 (E.D. Va. 2005))); *cf. Brock v. Entre Comput. Ctrs., Inc.*, 933 F.2d 1253, 1258 (4th Cir. 1991) ("No matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away.").

Regarding the interest in having local controversies decided at home, the local forum has only a slight and non-unique interest in this litigation. Plaintiffs allege that the harm from

---

[5] In their opposition briefing, Plaintiffs argue that the Court should take into consideration the disparity in financial resources between the parties. (*See* ECF No. 15 at 9–12.) The Court has taken this financial consideration into account when weighing the potential inconvenience to Plaintiffs and the members of the putative collective action created by a transfer of this litigation. *See, e.g.*, *Wamsley v. Lifenet Transplant Servs. Inc.*, Civil Action. No. 2:10–cv–00990, 2011 WL 1230047, at *5 (S.D. W. Va. Mar. 31, 2011) ("[I]t is appropriate to consider, in the interests of justice, whether a transfer from the venue where plaintiff's counsel was located would involve significant further expense to plaintiff." (citation omitted)).

Defendants' purported actions and policies impacted potential Plaintiffs who worked in this District. (*See, e.g.*, ECF No. 1 ¶¶ 38–39; ECF No. 15 at 2.) However, Defendants assert—and Plaintiffs' do not contest—that those alleged actions and decisions occurred in the Transferee District and were national in scope, rather than isolated solely to impacting Plaintiffs and other similarly situated residents of this District. (*See, e.g.*, ECF No. 12 at 10 (providing Defendants' argument that "the issues involved in this action are not unique to West Virginia, and to the contrary, involve centrally-made business decisions that when implemented affect all [of Defendant] ProTechnics' facilities").) Additionally, Plaintiffs do not raise any state-law claims, (*see* ECF No. 1), and not all Plaintiffs reside in this forum—including one of the two named Plaintiffs, (*see, e.g.*, *id.* ¶ 2). While this District has an interest due to the location of a portion of the alleged harm resulting from Defendants' purported actions and decisions, that interest is far from unique and is substantially vitiated by the lack of additional considerations heightening the interest of resolving this litigation in a local forum. *Cf. NanoEntek, Inc. v. Bio-Rad Labs., Inc.*, Civil No. 2:11cv427, 2011 WL 6023189, at *7 (E.D. Va. Dec. 2, 2011) (finding that the "interest in having local controversies decided at home" did not weigh against transfer where, "to the extent" there was harm caused by the defendant's actions, that district was "certainly not unique"). The Court therefore finds that the interest of the resolving this litigation in a local forum is a neutral factor.

Finally, the Court finds that the interests of justice weigh heavily in favor of transferring this matter. *See generally Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 996 (E.D. Va. 2011) (identifying "[r]elevant considerations in evaluating the 'interests of justice,'" such as "the pendency of a related action" (citation omitted)). This is not an isolated action. Rather, a

13

related matter is currently pending in the Transferee District.[6] *See Hill v. Core Labs. LP*, 4:16-cv-00581 (S.D. Tex.). The plaintiffs in that parallel litigation seek class certification for a national class, with the sole exception of Plaintiffs and the proposed class members in this case. *See id.*, ECF No. 1 ¶¶ 4, 25–27. Additionally, that related action addresses the exact policies at issue in this case and raises a virtually identical FLSA claim. *See id.*, ECF No. 1. If these two proceedings remained in separate districts, this Court and the district court presiding over the parallel litigation would engage in potentially duplicative case management and there would be a substantial risk of conflicting rulings. *Cf. Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) ("Most prominent among the elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments."). The Court finds that the presence of the closely related parallel litigation in the Transferee District weighs substantially in favor of transferring this action. *See, e.g.*, *Jaffe v. LSI Corp.*, 874 F. Supp. 2d 499, 505 (E.D. Va. 2012) (finding that transfer in that case would "preserve[]" the "important interests of judicial economy and avoidance of inconsistent judgments").

Ultimately, the Court finds that the balance of these factors requires the transfer of this matter. While the Court recognizes that "[t]he plaintiff's choice of forum is accorded great weight," *Leonard v. Mylan, Inc.*, 718 F. Supp. 2d 741, 745 (S.D. W. Va. 2010), the Court nonetheless finds that the balance of the pertinent factors weighs sufficiently in favor of transfer to overcome Plaintiffs' choice of forum, *see, e.g.*, *id.* ("The plaintiff's choice of forum is substantially

---

[6] On June 24, 2015, the plaintiff in the related action filed a proposed class-action complaint against, in part, Defendant "Core Laboratories LP d/b/a Protechnics" in the United States District Court for the Western District of Texas. *Hill v. Core Labs. LP*, 7:15-cv-00093-RAJ, ECF No. 1 (W.D. Tex. June 24, 2015). On August 13, 2015, the defendants in that action filed a motion to transfer venue to the Transferee District. *Id.*, ECF No. 12. Earlier this month, a district court in the United States District Court for the Western District of Texas granted this motion and transferred the related action to the Transferee District. *Id.*, ECF No. 36.

14

outweighed by [the transferee district's] position as the epicenter of this litigation."); *Arnett v. Mylan, Inc.*, Civil Action No. 2:10–cv–00114, 2010 WL 3220341, at *2 (S.D. W. Va. Aug. 13, 2010) (same). As such, the Court finds that Defendants have met their burden to demonstrate that transfer of this litigation is necessary "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 612, 615 (1964) (citation omitted). The Court further finds that transfer of this case avoids the very real danger of inconsistent rulings by this Court and a district court in the Transferee District, as well as conflicting results between this case and the parallel action currently pending in the Transferee District.

## IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion. (ECF No. 11.) Accordingly, the Court **TRANSFERS** this case to the United States District Court for the Southern District of Texas. The Court **DIRECTS** the Clerk to remove this matter from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Opinion to counsel of record and any unrepresented party. The Court further **DIRECTS** the Clerk to send a certified copy of this Opinion to the Clerk of Court for the United States District Court for the Southern District of Texas.

ENTER:        March 28, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

15